**Paul N. CARLIN, Appellant,**

v.

**John R. McKEAN, individually and as a member of the Board of Governors of the U.S. Postal Service, et al.**

**No. 86–5510.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1987.

Decided July 17, 1987.

and Louis A. Cox, Gen. Counsel, U.S. Postal Service, Washington, D.C., were on the brief, for appellee.

Before BORK and STARR, Circuit Judges, and EDWARD D. RE,* Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

On January 1, 1985, Paul N. Carlin became the 66th Postmaster General of the United States. Just over a year later, Carlin, was removed from that position. Believing that his dismissal was the product of a fraudulent and corrupt scheme, he filed this suit in district court, seeking a declaratory judgment and injunctive relief that would include his reinstatement as Postmaster General. The district court held that the case was not justiciable and dismissed the complaint. We affirm.

## I.

### A.

Historically, the office of Postmaster General has been a Cabinet post, and holders of the post were appointed and removed directly by the President. In 1970, however, Congress reorganized the Postal Service so that it would operate more along the lines of a private company. *See* Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719 (codified as amended at 39 U.S.C. §§ 101–5605 (1982)). The Act created a Board of Governors, composed of eleven members, to "exercise the power of the Postal Service." 39 U.S.C. § 202(a) (1982). Nine of the members are simply "Governors," who are appointed by the President subject to the advice and consent of the Senate. The other two members of the Board are the Postmaster General and the Deputy Postmaster General. *See id.* § 202(c) & (d). Though members of the Board, these two officials are not Governors.

Robert A. Saltzstein, with whom Joseph J. Saunders and Stephen Feldman, Washington, D.C., were on the brief, for appellant.

John Oliver Birch, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Deborah A. Robinson, and R. Craig Lawrence, Asst. U.S. Attys.,

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1982).

The Postmaster General is the "chief executive officer" of the Postal Service, 39 U.S.C. § 203 (1982), but is no longer appointed and removed directly by the President. Instead Congress provided that

> [t]he Governors shall appoint and shall have the power to remove the Postmaster General.... His pay and term of service shall be fixed by the Governors.

*Id.* § 202(c). The statute says nothing about when and why the Postmaster may be removed from office, but it does say how: "in the appointment or removal of the Postmaster General ... a favorable vote of an absolute majority of the Governors in office shall be required." *Id.* § 205(c)(1).[1]

### B.

On January 6, 1986, the date that Carlin was dismissed, there were eight Governors actually in service. Six Governors voted unanimously to dismiss Carlin. One was absent from the meeting, and one abstained. Carlin's complaint alleges that at least two of the Governors voted to remove him because he was an obstacle to their corrupt scheme to influence the award of Postal Service contracts to particular parties in exchange for illegal kickbacks. These actions alleged are said to constitute violations of the Act and the regulations issued under it.[2] He claims also, and more generally, that his removal was illegal because it was the product of fraud, or at least was ancillary to related fraudulent conduct.

The district court dismissed these claims as not justiciable. The court found that Congress granted the Governors "unfettered authority to remove the Postmaster General on the basis of any or no information and for a good reason, bad reason or no reason at all." *Carlin v. McKean*, No. 86-1611, mem. op. at 10 (D.D.C. July 18, 1986). The postal statutes therefore offered no substantive guidelines that a court could apply to evaluate the legality of the Governors' decision to remove Carlin, and no such standards had been established in the agency's own rules. Finally, the court found that it had no authority to order "the extraordinary relief" of Carlin's reinstatement. *Id.* at 16.

### II.

■ This appeal does not present the merits of Carlin's claims but simply the question of the district court's jurisdiction to entertain the suit. Despite Congress' extensive reorganization of the Postal Service in the 1970 Act, to permit the Service to operate in a more "business-like" fashion, the Service clearly remains a government agency—"an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201 (1982); *see also id.* § 409; *Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984); *Beneficial Fin. Co. of N.Y. v. Dallas*, 571 F.2d 125 (2d Cir.1978). The actions of government agencies are normally presumed to be subject to judicial review unless Congress has precluded review or a court would have no law to apply to test the legality of the agency's actions. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Block v. Community Nutrition Inst.*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). This presumption derives from a reading of section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 701(a) (1982). Apart from two very limited exceptions, however, the APA is not applicable "to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a) (1982); *see also id.* § 410(b)(1).

---

**1.** 39 U.S.C. § 1001(c) (1982) also states:

> The Postal Service may hire individuals as executives under employment contracts for periods not in excess of 5 years. Notwithstanding any such contract, the Postal Service may at its discretion and at any time remove any such individual without prejudice to his contract rights.

**2.** The appeal here is from the district court's grant of defendants' motion to dismiss, and we therefore assume that the facts are as plaintiff alleges them to be in his complaint. *See, e.g., Shear v. National Rifle Ass'n*, 606 F.2d 1251, 1253 (D.C.Cir.1979).

It has often been stated that the presumption of reviewability was a firmly rooted principle of administrative law even before the APA was enacted. *See, e.g., Chaney,* 470 U.S. at 832, 105 S.Ct. at 1656; *Doe v. Casey,* 796 F.2d 1508, 1514 (D.C.Cir. 1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 3182, 96 L.Ed.2d 671 (1987). That does not mean, however, that courts should continue to indulge a presumption of reviewability under the old administrative law principles when Congress has explicitly exempted an agency from the APA's coverage. In any event, we need not decide that issue here, for we are quite certain that Congress intended affirmatively to preclude judicial review of the Governors' decisions to appoint and remove the Postmaster General. *See* 5 U.S.C. § 701(a)(1) (1982). The Supreme Court has stated that Congress' intent to foreclose review must be shown by "clear and convincing evidence," *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), or at least must be "'fairly discernible in the statutory scheme.'" *See Community Nutrition Inst.,* 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Data Processing Serv. v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970)). Congress need not say flatly that review is precluded; an examination of several factors may be sufficient to convince the courts that Congress intended that. *See, e.g., Community Nutrition Inst.; Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977).

The statutory language here is quite explicit. The Governors are granted full power to appoint and to remove the Postmaster General. 39 U.S.C. § 202(c) (1982). No qualifications whatever are attached to their exercise of these powers. In the next sentence, Congress reiterated that the Postmaster General's "term of service shall be fixed by the Governors." *Id.* This language unmistakably vests the Governors with complete authority over the Postmaster's tenure and is ample indication that Congress intended to preclude judicial review of their decisions to appoint or remove any person in that post.

The structure of the statute constitutes further strong evidence of Congress' intent. At the same time that Congress placed the removal and the tenure of the Postmaster entirely in the power of the Governors, it provided in the same section that the Governors themselves "may be removed only for cause," 39 U.S.C. § 202(a) (1982), and that the Governors would serve for fixed terms of nine years. *Id.* § 202(b). A similar distinction with respect to removal and tenure is established between "executives" of the Postal Service (and the Postmaster is the "chief executive officer" of the Service, *see id.* § 203) and other officers and employees. Only the latter are to be in the "postal career service," which is a part of the civil service, and are assured "full protection of their employment rights by guaranteeing them an opportunity for a fair hearing on adverse actions." *Id.* § 1001(b). By contrast, "executives" may be removed "at [the Postal Service's] discretion and at any time." *Id.* § 1001(c). In addition, while officers and employees receive the coverage of chapter 75 of title 5 of the U.S.Code, *see* 39 U.S.C. § 1005(a)(1) (1982), which makes them removable only for cause and in accordance with numerous protective procedures, those same protections do not extend to the Postmaster General and other executives. *Id.* § 1005(a)(3).

All of this evidence is in harmony with the traditional understanding that decisions to remove government officials like the Postmaster General, who are not civil servants, are not reviewable in the courts. Appellee has referred us to the Supreme Court's decision in *In re Hennen,* 38 U.S. (13 Pet.) 230, 10 L.Ed. 138 (1839), perhaps a venerable precedent, but one which retains its vitality. There the Court refused to interfere with a district judge's action in discharging a court clerk because the judge wished to hire someone else instead. The Court rested on the proposition that when the law does not fix a tenure of office or require any cause for removal from that office, the office "must be held at the will and discretion of some department of the

government, and subject to removal at pleasure." *Id.* at 259. Where that is the case, *Hennen* said:

> then this Court can have no control over the appointment or removal, or entertain any inquiry into the grounds of removal. If the judge is chargeable with any abuse of his power, this is not the tribunal to which he is amenable: and as we have no right to judge upon this matter, or power to afford redress if any is required, we abstain from expressing any opinion upon that part of the case.

*Id.* at 261–62.

■ By the same reasoning, we cannot find any authority for the courts to control the removal of Carlin. Under *Hennen's* precise holding, when it is charged that the Governors abused their power in removing Carlin, "this is not the tribunal to which [they are] amenable," and "we have no right to judge upon this matter." 38 U.S. (13 Pet.) at 261.[3] The President had complete authority to remove the Postmaster when that official was a Cabinet member. In reorganizing the Postal Service in 1970, and transferring this authority from the President to the Governors, Congress quite deliberately avoided any break with the historical understanding that the Postmaster serves only at the pleasure of his superiors. We thus conclude that Congress has precluded us from reviewing Carlin's discharge.[4]

## III.

Although a finding that Congress precluded judicial review of specific agency actions normally ends judicial inquiry, Carlin raises two further points that we must consider. Both points turn on his allega-

tions that his firing was attributable to fraud and corruption.

### A.

■ The first argument is that, regardless of whether Congress meant to foreclose review, there is an "inherent power of courts to deal with fraud," *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 17, 92 S.Ct. 1411, 1420, 31 L.Ed.2d 658 (1972), which seems to stem from "the historic power of equity to set aside fraudulently begotten judgments." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944); *see also United States v. Wunderlich*, 342 U.S. 98, 99–100, 72 S.Ct. 154, 155, 96 L.Ed. 113 (1951); *Adams v. Nagle*, 303 U.S. 532, 541–42, 58 S.Ct. 687, 692, 82 L.Ed. 999 (1938). There are several problems with this argument. First, the cases cited by Carlin all deal with strictly financial matters—the award of contracts, the grant of patents, the entry of assessments, and the like. The only mention of this argument in *Board of Governors v. Agnew*, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947), a case that did involve the removal of officers, came in the Court's summary of the Board's contentions, *id.* at 444, 67 S.Ct. at 412–13, and the Court did not state or even consider whether a claim of fraud itself would provide jurisdiction to review the removal orders. So there is no precedent that a claim of fraud would provide jurisdiction in the case before us.

Second, the "historic power of equity" to which Carlin refers seems to be not a wide-ranging judicial power to correct any and all fraudulent activity that may be brought to a court's attention, but a much narrower power to revise a judgment that was ob-

---

**3.** That does not mean abuses of the sort Carlin alleges must go unchecked. The President can dismiss the Governors for "cause," and, of course, Governors may be charged in court for illegal conduct related to a decision which is itself unreviewable.

**4.** Carlin has also suggested that we have the power to review his firing by measuring its legality against one of the Postal Service's administrative rules, which states that the Board of Governors "directs the exercise of its powers under management that is expected to be hon-

est, efficient, and economical." 39 C.F.R. § 1.2 (1985). But it is settled law that "an agency cannot create through its implementing regulations a right of review withheld by the underlying statute." *Harrison v. Bowen*, 815 F.2d 1505, 1517 (D.C.Cir.1987). In addition, we note that this particular rule would not allow judicial review in any event, since it imposes no specific obligations on the Service and, indeed, appears to be purely hortatory or aspirational in character.

tained by perpetrating a fraud upon the court. *See, e.g., Hazel-Atlas Glass Co.,* 322 U.S. at 244–46, 64 S.Ct. at 1000–1001; *United States v. Throckmorton,* 98 U.S. (8 Otto) 61, 64–69, 25 L.Ed. 93 (1878). Yet here the argument does not seem to be that Carlin's dismissal was achieved by perpetrating any specific fraud upon the agency, but that some of those who pressed for his discharge were motivated at least in part by their desire to further other fraudulent activity that was occurring elsewhere. This court would undertake a broad expansion of the alleged fraud exception if it were to assume jurisdiction in this case.

Third, and most important, we would turn this claimed judicial power on its head if we were to find that it controls Congress rather than the reverse. Any power of review to control fraud is conceded to be an equitable or common law power. The legislature possesses the authority to modify the common law by statute. Yet here Carlin asserts that a congressional intent to preclude review of certain agency decisions can be defeated by this "historic" power. We cannot accept that assertion. A weaker and more palatable version of Carlin's argument would rest on a canon of construction: that fraud is an exception to every rule (for example, it typically tolls a statute of limitations), and thus that the preclusion of judicial review in this case should be understood as incorporating an exception for fraud. But this still leaves the issue as one of interpretation and therefore subject to control by statutory provisions. Here Congress' intent to preclude review is sufficiently clear from the language, structure, and background of the statute that it does not lend itself to any such exception. Finally, if Carlin is instead presenting the more extreme argument that Congress acts unconstitutionally by attempting to preclude review of such cases, because that works an unacceptable invasion of inherently judicial powers, we find novelty to be the theory's only merit. The Supreme Court has never limited Congress' powers in this manner, and we think it highly unlikely that it will ever do so.

#### B.

Carlin also has suggested that his removal was effected by a minority of the Governors, since the votes of those Governors who were motivated at least in part by their desire to further fraudulent activities should be adjudged null and void. He argues that this removal by a minority of the Governors does not comply with the governing statute, *see* 39 U.S.C. § 205(c)(1) (1982), and that this court can review his removal for failure to satisfy that requirement.

We agree that if a minority of current Governors attempted to remove the Postmaster General, their action would be illegal. Indeed, for their illegal attempt they would probably be subject to removal for cause. We need not decide whether the legality of their putative discharge would be reviewable by the courts, however, for that case is not before us. Here there is no question that a majority of the Governors then in office voted to discharge Carlin. What Carlin would put at issue is not their numbers but their motivations. This argument is, therefore, an attempt to clothe in procedural guise a determination that goes to the merits. We cannot take jurisdiction on this basis. *Cf. Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810).[5]

Because we have found no grounds on which to review this case, the decision of the district court is

*Affirmed.*

---

5. Carlin also alleges that his removal occurred at a meeting that was held in contravention of established procedures for public notice, public access, and publication of the agenda for the meeting. In addition, the allegations in his complaint might be construed as stating either a contract claim or a tort claim. Since all of these possible claims have the same basis—the alleged illegality of Carlin's dismissal from the position of Postmaster General—and seek essentially the same relief—either reinstatement or a declaration that his removal was illegal—we find that judicial review of all such claims is foreclosed for the reasons we have stated.