UNITED STATES of America,
Plaintiff-Appellant,

v.

Ognian BOZAROV, Defendant–Appellee.

No. 91–50646.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 6, 1992.

Decided Aug. 10, 1992.

**1038**

Andrew G. McBride, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Weyman I. Lundquist, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant-appellee.

Before: SNEED and D.W. NELSON, Circuit Judges, and WANGER, District Judge.[*]

D.W. NELSON, Circuit Judge:

## OVERVIEW

The United States appeals the dismissal of its indictment charging Ognian Bozarov with conspiracy to violate the Export Administration Act of 1979 (EAA or Act), 50 U.S.C.App. § 2401 et seq., for his role in a scheme to transport computer disc manufacturing equipment to Bulgaria. The district court dismissed the indictment based on its determination that the EAA was unconstitutional under the nondelegation doctrine because it delegated to the Secretary of Commerce legislative authority to control exports and prohibited judicial review of the Secretary's decisions. We reverse the decision of the district court because we believe that the Act's preclusion of judicial review does not violate the nondelegation doctrine. Because we interpret the Act to permit courts to review colorable constitutional challenges to the Act and claims that the Secretary has acted completely outside the scope of his delegated powers, we conclude that the EAA satisfies constitutional requirements.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Export Administration Act

The EAA authorizes the executive branch to impose export controls for reasons of national security, foreign policy, or domestic short supply. 50 U.S.C.App. §§ 2402(2), (10) and 2404–06. Congress delegated substantial authority under the Act to the Secretary of Commerce. In particular, the EAA requires the Secretary to establish and maintain a Commodity Control List (CCL) and to issue validated licenses for the export of listed goods and technologies.

The Act contains an elaborate set of criteria and internal procedures which governs the Secretary's imposition of export controls. 50 U.S.C.App. § 2403. For example, the Secretary must make a determination as to the foreign availability of the goods and consider whether the goods are being restricted pursuant to a multilateral agreement. 50 U.S.C.App. §§ 2403(c), 2404(e). Additionally, controls imposed for reasons of national security must be compiled in coordination with other Departments and agencies and be coordinated with allies through international negotiations with the Coordinating Committee for Multilateral Export Controls (COCOM). 50 U.S.C.App. § 2404(c)(3). The Secretary

---

[*] The Honorable Oliver W. Wanger, United States District Judge for the Eastern District of California, sitting by designation.

must periodically review the CCL to reassess the foreign availability of goods and the continuing need for national security controls. The Secretary must also furnish detailed reports with respect to each item monitored and submit annual reports to Congress concerning the administration of the EAA. 50 U.S.C.App. §§ 2406(b), 2413.

The EAA also contains detailed procedures for the processing of applications for validated export licenses for goods listed on the CCL. 50 U.S.C.App. § 2409. For example, the EAA prescribes time limits for decision, provides procedures for a right of appeal of a denial to the Secretary, and permits an applicant to respond to a denial in writing before a final determination is made. If the Secretary fails to act on an application in a timely fashion, an applicant may seek equitable relief in federal district court. The Secretary's denial of a validated license "shall be final and is not subject to judicial review." 50 U.S.C.App. § 2412(e). Indeed, all functions exercised under the Act are explicitly excluded from judicial review and from the protections of the Administrative Procedure Act (APA). 50 U.S.C.App. § 2412(a). A willful violation of the Act or any regulation, order or license issued thereunder is a felony punishable by fine and/or imprisonment for not more than ten years. 50 U.S.C.App. § 2410(b).

*Bozarov's Alleged Violation of the EAA*

Ognian Bozarov is an international trade official who resides in Sofia, Bulgaria. In 1981, while serving as the deputy general manager of a trade organization devoted to developing industry in Bulgaria, Bozarov entered into negotiations with a Dutch company for the purchase of computer disc manufacturing equipment. The Dutch company then contracted with an American company to supply the equipment. Although the American company appears to have submitted an application for an export license, Bozarov alleges that he was eventually told by his American and Dutch partners that the equipment did not require a license. The relevant commodities, however, were indeed listed on the CCL for national security reasons. After the goods were shipped in late 1982 and early 1983, a ten count indictment was issued against Bozarov and four others on November 3, 1983.

Despite the issuance of a warrant for the arrest of all the defendants, Bozarov was apparently never notified of the charges against him by the United States Attorney. He learned of the indictment only when the International Trade Association issued a temporary order denying all export privileges to Bozarov and his co-defendants. Bozarov protested the order on the grounds that he had not been a party to any conspiracy and had acted in good faith. In 1986, Bozarov's export privileges were restored by an administrative law judge in the Commerce Department. Apparently under the impression that the charges against him had been resolved in his favor by this decision, Bozarov applied for and was granted a visa to travel to the United States to accept an international trade award. This 1990 trip to Puerto Rico was completed without incident. In December 1990, Bozarov was selected to host a trade delegation in San Francisco and again obtained a travel visa from the United States embassy in Bulgaria. Bozarov was arrested when he arrived in San Francisco.

On January 4, 1991, Bozarov entered a plea of not guilty. On May 20, Bozarov filed a motion to dismiss the indictment, arguing that the EAA's preclusion of judicial review violated the constitutionally mandated separation of powers and the due process clause of the Fifth Amendment. After briefing and hearings, the district court rendered its decision in a telephone conference call on June 11. The district court concluded that because the EAA precluded judicial review, the Act was an unconstitutional delegation of legislative power to the Executive. The judge based his decision in part on the Supreme Court's recent decision in *Touby v. United States*, — U.S. ——, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991), finding implicit in the majority's reasoning the principle that "judicial review perfects a delegated law-making scheme by assuring that the exercise of such power remains within statutory bounds." The district court also rejected

the government's argument that preclusion of judicial review under the EAA was constitutional, even if review was otherwise required under the nondelegation doctrine, because the Secretary's decisions under the Act constituted nonjusticiable political questions. The court reasoned that application of the political question doctrine presupposes the constitutionality of the underlying statute. Because he found the Act unconstitutional under the nondelegation doctrine, the district judge did not consider Bozarov's due process argument. The district court then dismissed the indictment. This appeal followed.

## STANDARD OF REVIEW

All the questions presented on this appeal are pure questions of law subject to de novo review. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

I. Bozarov's standing to challenge the constitutionality of the EAA

■ As a preliminary matter, the government argues that Bozarov's failure to pursue administrative avenues for relief means that he cannot now challenge the statute's preclusion of judicial review. We disagree. First, Bozarov did not realize that he was an "exporter" who needed to seek a license, and because he did not seek a license he had no adverse decision to appeal through the EAA's review procedures. Second, raising a constitutional challenge before the agency would have been a futile exercise because an agency has no authority to declare its governing statute unconstitutional. The Supreme

Court has recognized that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). We have thus ruled on constitutional challenges to statutes even when the challenge was not raised in an earlier administrative proceeding. *See, e.g., Reid v. Engen,* 765 F.2d 1457, 1461 (9th Cir.1985).[1]

■ The government also contends that Bozarov is not entitled to bring a facial challenge to the EAA because doing so requires him to raise the claims of third parties. We reject this argument. A defendant in a criminal proceeding is entitled to "insist that his conduct be judged in accordance with a rule that is constitutionally valid." Monaghan, *Overbreadth,* 1981 Sup.Ct. Rev. 1, 8; *accord* P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 166 (3rd ed. 1988). Thus, in *INS v. Chadha,* 462 U.S. 919, 935–36, 103 S.Ct. 2764, 2775–76, 77 L.Ed.2d 317 (1983), the Court permitted Chadha to raise separation-of-powers claims even though they reflected the interests of the executive branch, rather than Chadha's own private interests. The Court required only that Chadha demonstrate "injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* at 936, 103 S.Ct. at 2776 (citation omitted). Bozarov has unquestionably been injured, *see* Hart & Wechsler, *supra,* and invalidation of the EAA will prevent him from being convicted. He therefore has standing to challenge the EAA as a whole, rather than merely as

---

1. The government's reliance on *Falbo v. United States,* 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), is misplaced. There, the Court refused to hear Falbo's constitutional challenge to his military classification not because he had failed to exhaust his administrative remedies, but because he had not yet been injured by the agency's action because he had not yet been inducted into the military. In contrast, Bozarov has already been indicted, and thus has been directly

injured by the statute that he claims is unconstitutional. *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), is also distinguishable because judicial review of the petitioner's constitutional challenge was available; Congress had simply specified a different court in which the petitioner should have brought that challenge. If we cannot entertain Bozarov's constitutional argument, that argument will go unheard by any court.

it is applied to him.[2] In sum, we conclude that Bozarov's constitutional challenges are properly before this court. We now proceed to the merits of Bozarov's challenge to the constitutionality of the EAA.

## II. Does the EAA violate the nondelegation doctrine because it precludes judicial review?

The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government. "The Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the United States,' U.S. Const., Art. I, § 1, and we have long insisted that 'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371–72, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989) (citing *Field v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 504, 36 L.Ed. 294 (1892)). The Court has also emphasized, however, that the nondelegation doctrine does not prevent Congress from obtaining the assistance of its coordinate branches through delegations of substantial enforcement and policymaking authority. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta*, 488 U.S. at 372, 109 S.Ct. at 654 (citing *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624

(1928)). Congress may therefore delegate under broad general directives so long as it "clearly delineates [the] general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *American Power & Light Co. v. SEC*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946).[3]

This appeal involves a question that the Supreme Court apparently has not yet squarely confronted: does a delegation of legislative power to the executive that is statutorily exempt from judicial review violate the nondelegation doctrine? In essence, this question turns on the purpose of requiring Congress to lay down an "intelligible principle." The government argues that the purpose of an intelligible principle is simply to channel the discretion of the executive and to permit Congress to determine whether its will is being obeyed. Bozarov contends that the purpose of requiring an intelligible principle is to permit a court to ascertain whether the will of Congress has been obeyed. We believe that the government has the better of the argument.[4]

The Supreme Court has upheld a number of statutes that precluded judicial review. In *Briscoe v. Bell*, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977), for example, the Court held that preclusion of judicial review of the Attorney General's decision that a state was subject to the Voting Rights Act was constitutionally permissible. *See also Morris v. Gressette*, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977). In both *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), and

2. The government cites a number of cases holding that the defendant could not prevail on a facial challenge outside the First Amendment context without showing that the statute was unconstitutional as applied to him. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Those cases have no application in this context, since Bozarov does claim that the statute is unconstitutional as applied to him.

3. The Supreme Court has invalidated statutes on nondelegation grounds only twice in the Court's history. *A.L.A. Schechter Poultry Co. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S.

388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). Although the nondelegation doctrine appears to have "fallen into ... desuetude" since these two decisions, at least one member of the Court appears to be calling for a reinvigoration of the doctrine. *Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S. 607, 686, 100 S.Ct. 2844, 2886, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring) ("We ought not to shy away from our judicial duty to invalidate unconstitutional delegations of legislative authority").

4. A Massachusetts district court has also rejected a nondelegation challenge to the constitutionality of the EAA. *United States v. Moller–Butcher*, 560 F.Supp. 550 (D.Mass.1983).

*Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Court declined to hear most of the complainants' challenges because it concluded that the relevant statutes precluded judicial review; the Court did not suggest that this preclusion was constitutionally objectionable. A number of other cases have concluded that statutes immunized agency actions from judicial review. *See, e.g., United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982); *Southern Ry. Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Schilling v. Rogers,* 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960).

Furthermore, the language of the APA itself also suggests that Congress intended that certain agency actions be immune from judicial review. The APA expressly states that the judicial review provisions of the APA apply except to the extent that statutes preclude judicial review. 5 U.S.C. § 701(a)(1). Both this language and the fact that the Supreme Court has upheld statutory schemes that preclude judicial review suggest that preclusion of review may in some cases be constitutional.

Bozarov argues that these cases are not dispositive of the question here. Perhaps most important, the bulk of these cases did not involve direct challenges to the statutes' preclusion of judicial review. The Court therefore did not analyze the requirements of the nondelegation doctrine in most of these cases. However, the fact that the Court and Congress both accept that judicial review may be unavailable at least suggests that the availability of review is not always a constitutional necessity. Moreover, although the case did not involve a nondelegation challenge, the Court expressly concluded in *Briscoe,* 432 U.S. at 414, 97 S.Ct. at 2434, that the statute's preclusion of judicial review was constitutional.

Bozarov also argues that the vast majority of these cases involved enforcement actions—such as the FDA deciding whether to initiate an investigation of a drug in *Heckler*—and not the kind of legislative decisionmaking arguably at issue in this case. However, Bozarov cites no authority for drawing a distinction between the exercise of executive authority and legislative authority when evaluating the need for judicial review, and we conclude that this argument is not very compelling. In both contexts, the central concern is that the agency exercise power only within the scope of its authority and within the confines of constitutional norms. Moreover, the primary concern of the nondelegation doctrine is not that the executive exercise no lawmaking authority; indeed, the Court has recognized that Congress must obtain the assistance of its fellow branches so that the government may function properly. *Mistretta,* 488 U.S. at 372, 109 S.Ct. at 654. The nondelegation doctrine is satisfied if Congress exercises the *"essentials* of the legislative function" by articulating an intelligible principle to guide the interstitial decisionmaking of the executive. *Opp Cotton Mills v. Administrator,* 312 U.S. 126, 145, 61 S.Ct. 524, 532, 85 L.Ed. 624 (1941) (emphasis added).

Bozarov contends that judicial review is also required to satisfy the nondelegation doctrine and points to a number of cases in which the Court held that no unconstitutional delegation of legislative authority had occurred because Congress provided the "administrative agency with standards guiding its actions such that a court could 'ascertain whether the will of Congress has been obeyed.'" *Skinner v. Mid–America Pipeline Co.,* 490 U.S. 212, 218, 109 S.Ct. 1726, 1731, 104 L.Ed.2d 250 (citations omitted); *see also American Power & Light,* 329 U.S. at 105, 67 S.Ct. at 142; *Yakus v. United States,* 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944). We do not believe that these cases support the broad proposition that Bozarov urges upon us. While these cases clearly suggest that the availability of judicial review is a factor weighing in favor of upholding a statute against a nondelegation challenge, we do not believe that they can be read for the proposition that judicial review is always constitutionally required. Perhaps most important, the statutes at issue in *Skinner, Yakus,* and *American Power* did not explicitly preclude judicial review. Thus,

none of these cases had occasion to address the issue of whether judicial review is always required, and none of the cases explicitly concluded that judicial review is mandatory.

We also do not agree with Bozarov that the Supreme Court's decision last term in *Touby,* —— U.S. ——, 111 S.Ct. 1752, made the requirement of judicial review explicit. The petitioners in that case argued that a provision of the Controlled Substances Act, which permits the Attorney General to schedule dangerous new drugs on its list of controlled substances on a temporary basis, was unconstitutional because it barred judicial review of that decision. The Court rejected the challenge because it concluded that judicial review was indeed possible under limited circumstances. In a concurring opinion, however, Justice Marshall, joined by Justice Blackmun, concluded "that an opportunity to challenge a delegated lawmaker's compliance with congressional directives is a constitutional necessity when administrative sanctions are enforced by criminal law." *Touby,* —— U.S. at ——, 111 S.Ct. at 1758. Justice Marshall emphasized that "judicial review perfects a delegated lawmaking scheme by assuring that the exercise of such power remains within statutory bounds." *Id.* Both Bozarov and the district judge concluded that the basis for Justice Marshall's concurrence—that judicial review is a constitutional necessity—was "implicit in the majority's reasoning" as well.[5]

We believe that Bozarov and the district judge are mistaken in the importance they attach to Justice Marshall's opinion. First, the opinion was simply a concurrence; the majority is under no obligation to address or correct errors in either a concurring or dissenting opinion. Second, it seems unlikely that the majority examined the statute to see if review was available because it believed that review was required; it probably considered the statutory issue in order to avoid having to decide the constitutional question of the necessity of judicial review. *See, e.g., Burns v. United States,* —— U.S. ——, ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991) (courts will avoid reaching constitutional questions if a permissible statutory interpretation is available).

■ We are also not persuaded by Bozarov's argument that the fact that the delegation at issue here eventually leads to criminal sanctions counsels in favor of his position. It is true that broad delegations might be more suspect in cases involving criminal sanctions. *See, e.g., United States v. Robel,* 389 U.S. 258, 275, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1967) (Brennan, J., concurring) ("The area of permissible indefiniteness [of delegation] narrows, however, when the regulation invokes criminal sanctions and potentially affects fundamental rights ... [T]he numerous deficiencies connected with vague legislative directives ... are far more serious when liberty and the exercise of fundamental rights are at stake.") (citations omitted); *Fahey v. Mallonee,* 332 U.S. 245, 250, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030 (1947) ("discretion to make regulations to guide supervisory action in such matters [appointment of conservators] may be constitutionally permissible while it might not be allowable to authorize creation of new crimes in uncharted fields."). According to Bozarov, the Secretary essentially has discretion to criminalize any conduct he chooses, and it is thus possible that the Executive could create purely political crimes entirely free from judicial review.

However, "[i]t is well-established that Congress may constitutionally provide a criminal sanction for the violation of regulations which it has empowered the President or an agency to promulgate." *United States v. Gurrola-Garcia,* 547 F.2d 1075, 1079 (9th Cir.1976). Moreover, the Secretary of Commerce is not creating a crime

---

5. Bozarov argues that if the majority did not agree with Marshall, it would have simply decided the case on the ground that judicial review is not required. He believes that the majority would not have examined the statute to see if judicial review was available if it did not believe that review was required. He also suggests that it is "inconceivable" that the majority would not have addressed Marshall's assertion in the majority opinion if it disagreed with his assertion that judicial review was a constitutional necessity.

when he exercises his authority under the EAA; Congress created the crime when it prohibited the export of goods without a valid license and set the penalties for that crime. All the Secretary does is decide which goods require a license. Therefore, "[a]lthough.'the regulation calls the statutory penalties into play, the statute, not the regulation, creates the offense and imposes punishment for its violation.'" *Id.* at 1077; *see also United States v. Mandel,* 914 F.2d 1215, 1221 (9th Cir.1990) (the decision to list a commodity on the CCL is not an element of the criminal offense). In a challenge brought to a similar statute, this circuit emphasized that the fact that the delegated authority might enable the executive to promulgate regulations whose violation leads to criminal liability did not alter its conclusion that the statute did not unconstitutionally delegate legislative power to the executive. *Gurrola–Garcia,* 547 F.2d at 1078–79 (nondelegation challenge to Mutual Security Act of 1954); *see also Samora v. United States,* 406 F.2d 1095 (5th Cir.1969) (same). We therefore conclude that the fact that the Secretary's decisions under the EAA in a sense make it possible for criminal liability to be imposed does not mean that the EAA violates the nondelegation doctrine.

The fact that the EAA involves matters of foreign policy and national security also counsels in favor of upholding the Act's preclusion of judicial review. *Mandel,* 914 F.2d at 1222 ("administrative decisions under the EAA implicate national security concerns and foreign policy considerations"). In upholding a broad delegation under the Mutual Security Act, the Ninth Circuit emphasized "the President's traditional dominance in and responsibility for foreign affairs." *Gurrola–Garcia,* 547 F.2d at 1078. "[B]ecause of the changeable and explosive nature of contemporary international relations, ... Congress—in giving the Executive authority over matters of foreign affairs—must of necessity paint with a brush broader than that it

customarily wields in domestic areas." *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). In *C. & S. Air Lines v. Waterman Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948), the Supreme Court emphasized that foreign policy decisions are "wholly confided by our Constitution to the political departments of the Government, Executive and Legislative." Permitting Congress broadly to delegate decisions about controlled exports to an agency makes sense; it would be impossible for Congress to revise the CCL quickly enough to respond to the fast-paced developments in the foreign policy arena. Moreover, the need for uniformity in the realm of foreign policy is particularly acute; it would be politically disastrous if the Second Circuit permitted the export of computer equipment and the Ninth Circuit concluded that such exports were not authorized by the EAA. Because the Supreme Court has consistently emphasized that broad delegations are appropriate in the foreign policy arena because of the political nature of the decisions and the compelling need for uniformity, the case for mandatory judicial review is even less compelling.

In sum, we believe that the Supreme Court cases upholding judicial preclusion of agency decisions, the language of the APA, and the fact that the EAA involves foreign policy issues support our conclusion that the EAA's preclusion of judicial review is constitutional.[6] We note in closing that our conclusion is bolstered by the fact that certain limited types of judicial review are available under the EAA despite the Act's seemingly absolute preclusion of review. First, colorable constitutional claims may be reviewed by the courts even when a statute otherwise precludes judicial review. *Webster,* 486 U.S. at 602–05, 108 S.Ct. at 2053–55.[7] Therefore, if the Secretary began to deny licenses for impermissible reasons (such as denying all license applications submitted by a

---

6. We emphasize that our holding today is limited to the EAA's preclusion of judicial review; we express no opinion on the constitutionality of other statutes that prohibit all review.

7. For example, the government has conceded that the courts may review Bozarov's nondelegation challenge to the EAA because it presents a colorable constitutional claim.

minority group), that claim would be reviewable in the courts. Second, we believe that claims that the Secretary acted in excess of his delegated authority under the EAA are also reviewable. The District of Columbia Circuit has also adopted this position in the context of the EAA. *See Dart v. United States*, 848 F.2d 217 (D.C.Cir. 1988) (Assistant Secretary had no authority to reverse an ALJ's judgment in favor of an exporter, because the EAA only permitted the Secretary to affirm, modify or vacate decision of an ALJ); *see also Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (court may review whether agency acted in excess of its delegated powers).[8] Therefore, if the Secretary began controlling exports for reasons other than national security, foreign policy or domestic short supply, a claim challenging that action would be reviewable as well. Because these two types of review are available, we believe that the EAA's preclusion of judicial review does not violate the nondelegation doctrine.[9]

III. Does the preclusion of judicial review violate Bozarov's right to due process?

■ As an initial matter, the parties dispute whether the due process issue is properly before this court. Although Bozarov challenged the indictment on due process grounds and the parties briefed this issue below, the district judge did not render an opinion on this issue and Bozarov chose not to brief it thoroughly before this court. We conclude that we may consider this claim now; the due process issue is inextricably bound up with the separation of powers issue and deciding the entire case now furthers our policy against piecemeal litigation through interlocutory appeals. *See TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 680–81 (9th Cir.1990) (court identified these concerns when deciding to what extent to exercise its jurisdiction).

■ Identifying Bozarov's due process challenge is somewhat difficult. He appears to argue at one point that the regulation violates the due process clause because it does not give fair notice of the forbidden conduct. This argument is meritless; the CCL is published in the Code of Federal Regulations at 15 C.F.R. § 399.1. *Cf. Adamo Wrecking Co. v. United States*, 434 U.S. 275, 283 n. 2, 98 S.Ct. 566, 572 n. 2, 54 L.Ed.2d 538 (1978) (noting that only notice of prohibited conduct provided by the Clean Air Act was publication of proposed emission standards in the Federal Register).

■ Bozarov apparently also argues that the classification of this equipment on the CCL had no basis in fact and that the preclusion of review of this classification violates his due process rights. However, two Ninth Circuit cases have settled the question whether the denial of judicial review of the classification violates due process. In *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1473 (9th Cir.1988), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989), the court concluded that because "the licensing issue is not an element of the charged offenses," the petitioner's due process rights were not violated by the trial court's acceptance of the Secretary's licensing determination in

---

**8.** The government suggested at oral argument that the Court's recent decision in *Board of Governors v. MCorp Financial*, — U.S. —, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), means that claims that an agency acted outside the scope of its delegated authority are not reviewable if the statute precludes judicial review. We do not believe that *MCorp* precludes judicial review of this type of claim under the EAA. The Court emphasized that preclusion of review was acceptable in part because the petitioner had a meaningful and adequate opportunity for judicial review of the regulation that he argued was promulgated in excess of the agency's statutory authority. The EAA presents an entirely different situation; petitioners have no other opportunity to challenge regulations or their applications. We therefore believe that *Dart* still sets out the correct standard to be applied to the EAA.

**9.** The government also argues that even if the nondelegation doctrine requires judicial review, that principle is not applicable in this case because the Secretary's decisions under the Act represent nonjusticiable political questions. Because we conclude that the Act does not violate the nondelegation doctrine, we need not reach the question of the impact of the political question doctrine on this case.

the prosecution of the defendants. In *Mandel,* the court distinguished *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) and *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), in which the Supreme Court held that " 'where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding.' " *Mandel,* 914 F.2d at 1221 (citation omitted). The court concluded that this principle was not applicable to a prosecution brought under the EAA, because the decision to control a commodity "does not involve the defendant's individual rights and is not an element of the criminal offense in the pending case." *Id.* *Spawr II* and *Mandel* are dispositive of Bozarov's due process challenge, and we reject his contention.

### CONCLUSION

We conclude that the Export Administration Act does not violate the nondelegation doctrine or Bozarov's due process rights. The district court's decision is reversed.

REVERSED and REMANDED.