**William V. LYLE, Petitioner,**

v.

**Joseph L. SIVLEY et al., Respondents.**

**No. CIV 92–575 TUC RMB.**

United States District Court,
D. Arizona.

Nov. 2, 1992.

---

William V. Lyle, in pro per.

Roger L. Duncan, Asst. U.S. Atty., Tucson, Ariz., for respondent Joseph L. Sivley.

## ORDER

BILBY, District Judge.

Petitioner William V. Lyle, currently incarcerated at FCI–Safford, has brought a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he has illegally been denied placement in a Community Corrections Center (more commonly known as a "halfway house").

## I. BACKGROUND

On September 9, 1987, petitioner was convicted on federal charges of possession of unregistered firearms and unregistered destructive devices. He was sentenced to a five year term of incarceration, and looks forward to a projected mandatory release date of March 1, 1993. The exact course of events underlying petitioner's claim herein is somewhat unclear; petitioner's convoluted and conflicting recitations of facts include many details not mentioned by respondent. But as will be seen below, the factual discrepancies are irrelevant to the ultimate resolution of this matter. For background, it suffices to say that on January 15, 1992, petitioner's Unit Team, after meeting with petitioner and reviewing his records, recommended that petitioner be given a sixty day placement at a Community Corrections Center ("CCC") to ease his reentry into the community. Respondent Joseph L. Sivley, warden of FCI–Safford rejected the Unit Team's recommendation and denied petitioner's CCC placement, stating:

> Mr. Lyle, due to [sic] the seriousness of the particular firearms involved in the instant offense, i.e., two model KG–9, 9mm machine guns, one RPB Industries, model M–10, 9mm machine gun, seven pipe bombs, and what appeared to be a smokeless propellant, your halfway house placement has been denied. . . . Placement at a halfway house would depreciate the seriousness of the crime(s) committed.

Petitioner thereafter pursued various administrative remedies, which proved fruitless. By way of this petition for writ of habeas corpus, Lyle now requests that the Court order respondent to immediately place him in an appropriate pre-release program for the remainder of his sentence.

## II. EXHAUSTION

■ A preliminary question is whether petitioner has exhausted available administrative remedies. Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment first must exhaust all administrative remedies. *Martinez v. Roberts,* 804 F.2d 570, 571 (9th Cir.1986); *Chua Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984); *Ruviwat v. Smith,* 701 F.2d 844, 845 (9th Cir.1983). In this regard, the Bureau of Prisons has established a three-level administrative remedy procedure, set forth at 28 C.F.R. § 542.10 et seq., governing prisoner complaints. At the first level, a prisoner may file a Request for Administrative Remedy (BP–229(13)) with the prison warden. If dissatisfied with the warden's response, the prisoner may proceed to the second level by filing a Regional Administrative Remedy Appeal (BP–DIR–10). The third and final level involves the filing of a Central Office Administrative Remedy Appeal (BP–DIR–11). Only after exhausting this three-level process may the prisoner file a petition for writ of habeas corpus in the United States District Court.

The exhaustion requirement is subject to exception, however. Unlike the situation in which a state prisoner petitions for writ of habeas corpus, exhaustion of administrative remedies is not a jurisdictional requirement in the context of a federal prisoner's habeas corpus petition. *E.g., Brown v. Rison,* 895 F.2d 533, 535 (9th Cir.1990). Thus, this Court may, in its discretion, excuse a petitioner's failure to exhaust and reach the merits of the claim. *Id.; United States v. Browning,* 761 F.Supp. 681, 683 (C.D.Cal.1991).

■ Here, the parties dispute whether petitioner has exhausted available administrative remedies. The court is unable from the written record to determine whether in fact the exhaustion requirement has been satisfied. Rather than further delay this matter by virtue of an evidentiary hearing on the exhaustion issue, however, the Court will excuse what may be a failure to exhaust and proceed directly to the merits.

## III. PETITIONER'S CLAIMS

■ Petitioner asserts entitlement to relief under two distinct legal theories. First, he alleges that the decision to deny CCC placement was arbitrary, capricious, and politically motivated. Second, he contends that the decision deprived him of a

constitutionally protected liberty interest without due process of law. Warden Sivley has failed to address the merits of either of petitioner's claims; instead, he responds with the broad argument that federal prison authorities have wide-ranging discretion to determine an inmate's place of confinement. While respondent's citation of the general rule is correct, *see, e.g.,* 18 U.S.C. § 4082 (repealed Oct. 12, 1984; applicable to all offenses committed before Nov. 1, 1987); *United States v. Doe,* 734 F.2d 406, 407 (9th Cir.1984), it is equally true that respondent's decision may be subject to reversal if it constitutes an abuse of discretion or an unlawful deprivation of a right protected by the Due Process Clause. Thus the Court must, on its own, address the merits of petitioner's claims.

### A. *Arbitrary and Capricious Exercise of Discretion*

 A threshold question is whether this Court has jurisdiction to review the decision challenged. While there is a presumption that agency action is subject to judicial review, where Congress has specifically precluded review or committed agency action to discretion by law, the federal courts lack jurisdiction. *Wallace v. Christensen,* 802 F.2d 1539, 1542 (9th Cir.1986) (en banc) (quoting *Heckler v. Chaney,* 470 U.S. 821, 828–29, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985)). According to the Supreme Court, only "clear and convincing evidence" of Congress' intent to foreclose judicial review will overcome the general presumption that it is available. *Abbot Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *see Bowen v. Michigan Acad. of Family Physicians,* 476 U.S. 667, 673, 106 S.Ct. 2133, 2137, 90 L.Ed.2d 623 (1986); *Block v. Community Nutrition Institute,* 467 U.S. 340, 349–51, 104 S.Ct. 2450, 2455–56, 81 L.Ed.2d 270 (1984). Congress need not, however, flatly state its intent to preclude review; examination of other relevant factors may suffice as proof of congressional intent. *Carlin v. McKean,* 823 F.2d 620, 623 (D.C.Cir.1987). Where Congress has immunized agency decision-making from judicial scrutiny, a court may

conduct only the most limited of reviews, and may consider only whether the agency has acted outside its statutory limits or has violated the constitution. *Wallace, supra,* 802 F.2d at 1551–52; *accord United States v. Bozarov,* 974 F.2d 1037, 1044–45, (9th Cir.1992) (colorable constitutional claim reviewable even where judicial review ostensibly precluded by statute) (citing *Webster v. Doe,* 486 U.S. 592, 602–05, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988)).

The precise question presented by this case—whether Congress has foreclosed judicial review of decisions to grant or deny pre-release treatment—appears to be one of first impression. The statutory provision governing the transfer of federal prisoners to pre-release treatment is 18 U.S.C. § 3624(c), enacted as part of the Sentencing Reform Act of 1984. The jurisdictional question arises because section 3625 of title 18, also enacted as part of the Sentencing Reform Act, provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." The provisions of title 5 referenced by section 3625 represent the heart of the Administrative Procedure Act ("APA"): sections 554 and 555 set forth the procedures which are to guide agency rule making and adjudication; sections 701 through 706 govern judicial review of agency action. Thus, by express provision, section 3625 establishes that the APA does not apply to decisions made under 3624(c).

It is somewhat unclear whether, considered alone, the statutory language of section 3625 constitutes the sort of "clear and convincing" evidence necessary to overcome the presumption of judicial review. While it is clear that the review provisions of the APA do not apply to determinations made under section 3624(c), it could be argued that the federal courts have inherent authority to review agency action even where the APA is inapplicable. *But see Carlin, supra,* 823 F.2d at 623 (expressing doubt that courts "should continue to indulge a presumption of reviewability under the old administrative law principles when

759

Congress has explicitly exempted an agency from the APA's coverage"). Reference to the House Report on the Sentencing Reform Act of 1984, however, provides conclusive proof that Congress indeed intended that determinations made pursuant to section 3624(c) not be reviewable.

First, the Report declares that section 3625 is "parallel" to a similar statutory provision making the APA inapplicable to certain determinations of the federal Parole Commission. *See* H.Rep. No. 98–1030, 98th Cong. 2d Sess. 149 (1984) *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332. That provision, 18 U.S.C. § 4218(d) (repealed Nov. 10, 1986), allows for full APA review of the Parole Commission's rule-making activities, but commits to agency discretion specific adjudicatory determinations affecting the status of individual prisoners or parolees. Likewise, the House Report on section 3625 provides that rule-making activities are to be reviewable under the APA, while "adjudication[s] of specific cases" are not. It is apparent that the House Report's reference to section 4218(d) as a "parallel" provision evidences Congress' intent to commit to agency discretion "substantive," individualized decisions to grant or deny pre-release treatment. *See Wallace, supra,* 802 F.2d at 1546 (Congress specifically intended to exempt from judicial review "substantive decisions to grant or deny parole"). Significantly, the Ninth Circuit, interpreting this "parallel" provision, held that "substantive" adjudicatory decisions of the Parole Commission are exempt from judicial review. *Id.* All these parallels provide telling evidence that section 3625, like section 4218(d), precludes review of certain individualized, discretionary agency decisions.

Second, the House Report states that the result effected by section 3625 is "in accord with" the decision reached in *Wolfish v. Levi,* 573 F.2d 118 (2d Cir.1978), *rev'd on other grounds sub nom Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). H.Rep. No. 98–1030, 98th Cong. 2d Sess. 149 (1984) *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332 & n. 364. In *Wolfish,* the Second Circuit held that certain decisions of the Bureau of Prisons were committed to agency discretion and not

subject to judicial review. *Wolfish,* 573 F.2d at 125. The conclusion that section 3625 bars judicial review certainly accords with the *Wolfish* decision.

Third, the Report states that section 3625 "is not intended to eliminate constitutional challenges by prisoners under the appropriate provisions of law." H.Rep. No. 98–1030, 98th Cong. 2d Sess. 149 (1984) *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332. This declaration is, of course, consistent with the rule stated above, that the federal courts always retain jurisdiction to review colorable constitutional claims, even where Congress has otherwise foreclosed judicial review. At the same time, it compels the conclusion that section 3625 is eliminating something; it follows that "something" is review of nonconstitutional claims.

■ Finally, the Report repeatedly refers to the "substantial discretion" being vested in the Bureau of Prisons, and notes the importance that such discretionary decisions not be "second guessed." *See id.* at 3331–32; *accord Wallace, supra,* 802 F.2d at 1551 ("Our review of the provisions of the Parole Act and its legislative history reveals that Congress intended to carve out an area of decision-making which ... is committed to agency discretion and hence unreviewable even for abuse of discretion.") While some might dispute Congress' use of the somewhat pejorative term "second guessing" in reference to the exercise of the federal judicial power, the message rings loud and clear. In light of the overwhelming evidence of congressional intent, this Court concludes that in enacting section 3625, Congress intended to "carve out" an area of decision making committed solely to agency discretion and not subject to judicial review.

■ That decided, a further question arises whether section 3625 applies retroactively to the claim of petitioner herein. It is indisputable that section 3624(c) applies retroactively "to all inmates, regardless of the date of their offense." 18 U.S.C.A. § 3624(c) (Editorial Note) (Supp.1992). Whether section 3625 should be given retroactive application is somewhat less clear.

The better view is that since section 3624(c) applies retroactively, so too should the limitation on judicial review of decisions made under that provision be retroactive. This conclusion is supported both by common sense and by the admittedly less than crystal-clear statutory language. *See* 18 U.S.C.A. § 3625 (Editorial Note) (Supp. 1992) (section is "applicable only to offenses committed after taking effect of sections 211 to 239 of Pub.L. 98–473, and *except as otherwise provided for therein....*" (emphasis added)).

■ Therefore, this Court concludes that it may conduct only the most limited review of respondent's decision to deny petitioner's CCC placement. Specifically, the Court has jurisdiction to review petitioner's claim only to the extent he alleges that respondent has violated the constitution or acted "beyond the scope of discretion granted by Congress." *Wallace, supra,* 802 F.2d at 1551. By contrast, a "bare allegation" that respondent has abused *his* discretion is insufficient to support jurisdiction. *Id.* (emphasis in original).

It is apparent that petitioner has failed to allege facts supporting the conclusion that respondent has acted outside the scope of discretion granted by Congress. On the contrary, Warden Sivley has done no more than exercise exactly that discretion granted him by section 3624(c). Indeed, he has expressly stated a legitimate ground for the decision to deny CCC placement: concern over the seriousness of the firearms charges of which petitioner originally was convicted. Petitioner's conclusory and wholly unsupported allegation that respondent's decision was "political," and somehow related to the upcoming presidential election is insufficient to establish the sort of *ultra vires* abuse of discretion necessary to state a cognizable claim for relief. *Cf. Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir.1982) (vague and conclusory allegations of civil rights violations insufficient to state claim under 42 U.S.C. § 1983).

### B. *Deprivation of Due Process*

As previously noted, even where Congress has sought to preclude judicial review of agency action, a federal court may review colorable constitutional claims. *See Bozarov, supra,* 974 F.2d at 1044–45. Here, petitioner alleges that the decision to deny CCC placement constitutes a violation of the Due Process Clause of the Fifth Amendment. Clearly, this Court has jurisdiction to reach the merits of petitioner's Due Process claim.

■ The threshold question presented by petitioner's claim is whether a constitutionally protected liberty interest is implicated by the denial of CCC placement. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.[1] With regard to the Due Process Clause itself, the Supreme Court has held that the transfer of an inmate to a more restrictive environment does not impinge on any constitutionally created liberty interest, even where "severe hardships" to the prisoner result. *Hewitt v. Helms,* 459 U.S. 460, 467 & n. 7, 103 S.Ct. 864, 869 & n. 7, 74 L.Ed.2d 675 (1983). It follows that prison officials' "*disinclination* to transfer [a prisoner] to a *less restrictive* environment ... cannot be said to affect a constitutional 'liberty' interest." *Badea v. Cox,* 931 F.2d 573, 576 (9th Cir.1991) (Hall, J., concurring & dissenting) (emphasis in original). Thus it is apparent that the Due Process Clause does not give rise to a liberty interest in prerelease treatment.

■ Where it is argued that a statute, rule, or regulation creates a liberty interest, the inquiry is whether the law places "substantive limitations on official

---

1. It should be noted that this issue most often arises where state prisoners are asserting that state law creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *E.g., Thompson v. Kentucky Dept. of Corrections,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). This case, on the other hand, involves not state, but federal law, and the Fifth, rather than the Fourteenth Amendment. The difference, however, is one of form, not substance. *See, e.g., Scalise v. Thornburgh,* 891 F.2d 640, 649 (7th Cir.1989) (applying Fourteenth Amendment analysis to Fifth Amendment claim).

discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). Thus, a protected liberty interest has been found where a regulation or statute contains "explicitly mandatory language." *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463–64, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). The question then is whether the language of section 3624(c) is explicitly mandatory enough to create a liberty interest. Section 3624(c) provides in pertinent part that:

> The Bureau of Prisons *shall, to the extent practicable,* assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community....

Admittedly, Congress' use of "shall" suggests a certain limitation on the exercise of discretion. But as the Ninth Circuit has noted, "the word 'shall' alone is not sufficient. Rather, the liberty interest is created when the word 'shall' is used to mandate certain procedures...." *Toussaint v. McCarthy,* 801 F.2d 1080, 1098 (9th Cir.1986) *quoted in Badea, supra,* 931 F.2d at 576 (Hall, J., concurring and dissenting). Moreover, here, the word "shall" is immediately followed by the qualifying phrase "to the extent practicable." Practically speaking, the statutory language leaves much room to maneuver: section 3624 "stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Thompson, supra,* 490 U.S. at 463–64, 109 S.Ct. at 1910; *see* H.Rep. No. 98–1030, 98th Cong. 2d Sess. 148 (1984) *reprinted in* 1984 U.S.C.C.A.N. 3182, 3331 ("It is intended that the Bureau of Prisons have substantial discretion in determining what opportunity for reentry should be made available to each particular prisoner....") The Court therefore concludes that section 3624(c) does not create a protected liberty interest. This conclusion is buttressed by the fact that every other federal court to have addressed the ques-

tion has reached the same result. *See Flisk v. United States Bureau of Prisons,* 1992 WL 80523 (N.D.Ill. Apr. 10, 1992); *United States v. Mizerka,* 1992 WL 176162 (D.Or. Jul. 16, 1992); *accord United States v. Laughlin,* 933 F.2d 786, 789 (9th Cir. 1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society."); *Badea, supra,* 931 F.2d at 576 (Hall, J., concurring and dissenting) ("Section 3624(c) refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system.").

## IV. CONCLUSION

Because respondent Sivley acted well within the scope of the discretion granted by Congress, this Court lacks jurisdiction to review the denial of petitioner's CCC placement. Petitioner's claim that the decision was arbitrary and capricious must fail. Moreover, section 3624(c) does not create a constitutionally protected liberty interest. Accordingly, petitioner's Due Process claim also must fail. Where, as here, the petitioner has failed to state a claim for relief, no evidentiary hearing need be held. *United States v. Burrows,* 872 F.2d 915, 917 (9th Cir.1989). IT IS THEREFORE ORDERED that the petition for writ of habeas corpus be and is DENIED.