**NATIONAL KNITWEAR MANUFAC-TURERS ASSOCIATION, Petitioner,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION, Respondent.**

**No. 81–1002.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1981.

Decided Dec. 11, 1981.

Richard H. Gimer, Washington, D. C. (Richard G. White, Nicky Calio, Santarelli & Gimer, Washington, D. C., on brief), for petitioner.

Andrea Limmer, Dept. of Justice, Washington, D. C. (Margaret A. Freeston, Acting Gen. Counsel, D. Stephen Lemberg, Asst. Gen. Counsel, Allen F. Brauninger, Consumer Product Safety Commission, William F. Baxter, Asst. Atty. Gen., Barry Grossman, Dept. of Justice, Washington, D. C., on brief), for respondent.

Before BUTZNER and SPROUSE, Circuit Judges.*

BUTZNER, Circuit Judge:

▮▮▮ The principal issue raised by this petition for review is whether a statement of policy issued by the Consumer Product Safety Commission is in reality an amendment to a flammability standard for children's sleepwear.[1] The petitioner, National Knitwear Manufacturers Association, seeks to have the statement set aside on the ground that the Commission amended the standard by including underwear without complying with statutory prerequisites. The Commission asserts that it has not amended the standard but instead has issued an explanation of enforcement policy or an interpretive rule. We conclude that, notwithstanding its characterization of the statement, the Commission has actually amended the flammability standard. Because the Commission did not comply with the pertinent statute, we grant the petition and set the statement aside.

I

The Flammable Fabrics Act of 1953 prescribed a flammability standard for wearing apparel and authorized the Federal Trade Commission to enforce it.[2] Several years later, Congress delegated to the Secretary of Commerce the authority to conduct research and to issue new flammability standards whenever the public was exposed to an "unreasonable risk of fire" from fabrics.[3] Pursuant to this authority, the Secretary promulgated a standard for the flammability of children's sleepwear, which contained a definition expressly excluding underwear.[4]

In 1972, shortly before the sleepwear standard became effective, the Federal Trade Commission issued a statement in response to questions concerning enforcement of the standard.[5] This statement explained that whether a fabric or a product of wearing apparel was intended or promoted for sleepwear or intended to be worn primarily for sleeping depended on the facts of each case. The FTC then identified a number of factors that it would consider in

---

*With the consent of counsel, this case was heard by two judges because illness prevented the third judge from attending oral argument.

1. Jurisdiction to review amendments of flammability standards is conferred on courts of appeals by 15 U.S.C. § 1193(e).

2. Flammable Fabrics Act, ch. 164, 67 Stat. 111 (1953) (codified as amended at 15 U.S.C. §§ 1191–1204).

3. Flammable Fabrics Act as amended by Pub. L.No. 90–189, § 3, 81 Stat. 568 (1967), 15 U.S.C. § 1193.

4. See text at note 7, infra.

5. See 37 Fed.Reg. 5982 (1972).

classifying apparel. It advised manufacturers of fabrics and garments that did not comply with the flammability standards to label their products as unsuitable for sleepwear if there was a likelihood that the product would be used for sleeping.

In 1980, the Consumer Product Safety Commission, which had succeeded the Secretary of Commerce and the FTC as the administrator of the Flammable Fabrics Act,[6] issued the statement at issue in this proceeding. The 1980 statement purported to be a reissuance of the 1972 statement, but it amplified the latter significantly. The 1980 statement provides that despite a garment's being labeled as underwear and unsuitable for sleepwear, the Commission may bring an enforcement action if it believes that the garment is intended to be worn primarily for sleeping or that it has been promoted as sleepwear.[7] When the Commission issued its 1980 statement, it did not comply with the Flammable Fabrics Act, 15 U.S.C. § 1193.

## II

The Commission's characterization of its statement as an exposition of its policy or an interpretation of the standard does not preclude our finding that it is something more. "[I]t is the substance of what the Commission has purported to do and has done which is decisive." *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 416, 62 S.Ct. 1194, 1199, 86 L.Ed. 1563 (1942). The Commission's action must be consistent with its statutory grant of authority. *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). This familiar precept assumes added significance where, as here, the Congress prescribed not only what the Commission can do but, equally important, how to do it.

6. Pub.L.No. 92–573, § 30, 86 Stat. 1231 (1972), 15 U.S.C. § 2079.

7. *See* 45 Fed.Reg. 73884 (1980).

8. Section 1193 of title 15 refers to the Secretary of Commerce, but the Secretary's functions have been transferred to the Consumer Product Safety Commission. 15 U.S.C. § 2079.

The Commission cannot amend a standard simply by complying with the rule making provisions of the Administrative Procedure Act, 5 U.S.C. § 553. Section 4 of the Flammable Fabrics Act, 15 U.S.C. § 1193, requires the Commission[8] to make an initial finding on the basis of investigation or research that the amendment of a standard is needed to protect the public against an unreasonable risk of fire. The Commission must then conduct proceedings to determine whether the amendment of the standard is appropriate. The statute provides:

Each ... amendment ... shall be based on findings that [it] is needed to adequately protect the public against unreasonable risk of the occurrence of fire leading to death, injury, or significant property damage, is reasonable, technologically practicable, and appropriate, is limited to such fabrics, related materials, or products which have been determined to present such unreasonable risks, and shall be stated in objective terms.[9]

The statute also provides that absent extraordinary circumstances, amendments will not become effective sooner than 12 months after promulgation and must exempt fabrics and products in inventory. Moreover, an amendment cannot be promulgated until interested persons have had an opportunity to present their concerns orally. An amendment challenged in a petition for judicial review "shall not be affirmed unless the findings required by [§ 1193(b)] are supported by substantial evidence on the record taken as a whole." 15 U.S.C. § 1193(e)(3). Thus, the text of the Act shows that Congress intended that a flammability standard should not be amended casually.[10] This congressional in-

9. 15 U.S.C. § 1193(b).

10. The legislative history emphasized the importance of the Act's restrictions pertaining to the promulgation or amendment of a standard:

The bill is intended to assure that the Secretary [of Commerce] will promulgate only such new or amended standards or regulations as may be necessary and appropriate to

tent must be taken into account in determining the substance and the nature of the Commission's 1980 statement.

### III

The children's sleepwear standard was initially issued after the Secretary had instituted the proceedings and made the findings required by § 1193. As a result of the Secretary's investigation and findings, children's underwear was expressly excluded from the definition of sleepwear:

> "Children's Sleepwear" means any product of wearing apparel up to and including size 6X, such as nightgowns, pajamas, or similar or related items, such as robes, intended to be worn primarily for sleeping or activities related to sleeping. Diapers and underwear are excluded from this definition.
>
> . . . .
>
> "Item" means any product of children's sleepwear, or any fabric or related material intended or promoted for use in children's sleepwear.[11]

Notwithstanding the exclusion of underwear from the definition of sleepwear and without having made the findings required by § 1193(b), the Commission now proposes to bring enforcement actions involving products that are manufactured, labeled, and sold as underwear. The basis of this proposal is the Commission's assertion that the definition of "Children's sleepwear" allows it to apply the standard to any fabric "intended or promoted for use in children's sleepwear" and any product "intended to be worn primarily for sleeping or activities related to sleeping."

The difficulty with the Commission's position is that the standard excludes underwear from the definition of sleepwear. Although the definition includes items related to sleepwear, it dictates that underwear is not to be considered a related item. Consequently, the flammability standard applies to sleepwear and related items other than underwear. By proposing to find that particular brands of underwear are subject to the standard, the Commission has in effect amended the standard despite the express exclusion of underwear from the definition of sleepwear. Because this amendment has been accomplished without compliance with 15 U.S.C. § 1193, we must set aside the Commission's statement. *Cf. Chrysler Corp. v. Brown*, 441 U.S. 281, 312–16, 99 S.Ct. 1705, 1723–25, 60 L.Ed.2d 208 (1979).

The petitioner also contends that the Commission's action was arbitrary, capricious, and unsupported by substantial evidence. In view of our disposition of the petition on procedural grounds, we have no occasion to consider this issue. We express no opinion on the question whether underwear should be subject to the same flammability standards as sleepwear. We hold only that this question must be addressed in accordance with the Flammable Fabrics Act, 15 U.S.C. § 1193 and the Administrative Procedure Act, 5 U.S.C. § 553. The petition for review is granted, and the statement published in 45 Fed.Reg. 73884 (1980), to be codified in 16 C.F.R. §§ 1615.64 and 1616.65, is set aside.

---

carry out the purposes of the legislation. Any new standard or other regulation would have to be tailored to meet the particular need or hazard shown to exist consistently with the criteria set forth in the bill. For example, if an appropriate regulation for children's clothing was shown to be needed and deemed to be effective, such regulation could be promulgated for children's clothing without imposing the same requirement on all other wearing apparel.

. . . .

[P]rocedural safeguards will strengthen the bill by making certain that whatever action is taken will be based on a proper record and impartial deliberation.
S.Rep.No. 407, 90th Cong., 1st Sess. 5 (1967).

11. The standard became effective in 1972. It is codified in 16 C.F.R. § 1615 (1980). The quoted extracts are §§ 1615.1(a) and (c). The size of sleepwear was extended to include sizes 7–14. *See* 16 C.F.R. § 1616.2(a).