**Jonnae WIGGINS, Petitioner,**

v.

**Phillip WISE, Warden, and Federal Bureau of Prisons, Respondents.**

**Civil Action No. 1:96–0113.**

United States District Court, S.D. West Virginia, Bluefield.

Oct. 9, 1996.

Hunt L. Charach, Federal Public Defender, Charleston, WV, for plaintiff.

Michael L. Keller, Assistant U.S. Attorney, Rebecca A. Betts, U.S. Attorney, Charleston, WV, Bill Burlington, FCI Butner, Butner, NC, for respondents.

### JUDGMENT ORDER

FABER, District Judge.

On February 14, 1996, petitioner filed an application for habeas corpus and declaratory relief. Petitioner contests the Bureau of Prisons policy which denied her eligibility for early release under a drug treatment program provided for by 18 U.S.C. § 3621(e)(2). Petitioner, an inmate at the Federal Prison Camp in Alderson, West Virginia, is currently serving a 37–month sentence for conspiracy to distribute and possession with intent to distribute heroin. At sentencing, petitioner received a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Petitioner contends that but for the Bureau of Prisons policy denying early release to prisoners who receive enhancements for possession of dangerous weapons, she would be eligible for immediate release. Petitioner's projected release date, absent eligibility for early release, is December 30, 1996. Both sides agree that petitioner has exhausted her administrative remedies.

On March 4, 1996, respondents filed a motion to dismiss, arguing that 18 U.S.C. § 3625 forecloses review under the Administrative Procedures Act (APA) of actions taken by the Bureau of Prisons pursuant to 18 U.S.C. §§ 3621–3626.

By Standing Order entered on October 6, 1994, and filed in this action on February 14, 1996, this action was referred to United States Magistrate Judge Mary S. Feinberg pursuant to 28 U.S.C. § 636(b)(1)(B). On May 29, 1996, Magistrate Judge Feinberg submitted her findings of fact and recommended the following:

(1) that the respondent's motion to dismiss for lack of subject matter jurisdiction under the Administrative Procedure Act and 18 U.S.C. § 3625 be dismissed except to the extent that plaintiff seeks judicial review of her individual claim to participate in the incentive program.

(2) that the district court hold unlawful and set aside Program Statement 5162.02 for failure to comply with the rule-making provisions of the APA.

(3) that the district court hold unlawful and set aside Program Statement 5162.02, Section 9 as being in excess of statutory authority.

(4) that the district court declare that petitioner is a "prisoner convicted of a nonviolent offense," within the meaning of 18 U.S.C. § 3621(e)(2)(B).

(Findings and Recommendations at 67–68.)

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted ten days and three mailing days in which to file objections to the Magistrate Judge's Findings and Recommendations. By Order entered on June 4, 1996, the court granted the parties an extension of time until June 25, 1996, in which to file objections. Respondents filed their objections on June 25, 1996. Petitioner filed a response to respondents' objections on September 3, 1996. In accordance with 28 U.S.C. § 636(b)(1)(B), the court has conducted a *de novo* review of the record.

Section 3621 of the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) provided for substance abuse

treatment in federal prisons. It also established incentives for prisoners to participate in these programs by allowing the Bureau of Prisons to reduce by not more than one year the sentence of any prisoner who participated in a substance abuse program provided the prisoner had been "convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2). The statute reads in pertinent part as follows:

> (2) Incentive for prisoners' successful completion of treatment program.
>
> (A) Generally. Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions of confinement as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such conditions on determining that substance abuse has recurred.
>
> (B) Period of Custody. The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2).

At issue here is the meaning of the phrase "a prisoner convicted of a nonviolent offense." The legislative history of this statute provides no guidance, and nowhere else in the United States Code is the term "nonviolent offense" used.

In implementing this ambiguous code section, the Bureau of Prisons adopted 28 C.F.R. § 550.58 which states in pertinent part as follows:

An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section, ... unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

The regulation was more precise than the statute in three ways: it defined a "nonviolent offense" as an offense which was not a "crime of violence;" it explained that the offense relevant to this analysis was the "current offense" or offense of conviction; and it provided that certain violent prior offenses would also disqualify a prisoner from the incentive program.

The provisions of this regulation were implemented by Bureau of Prisons Program Statement 5162.02 ("the Program Statement"). The Program Statement purports to comply with the following definition of "crime of violence" found in 18 U.S.C. § 924(c)(3):

> The term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Although 28 C.F.R. § 550.58 and the Program Statement defined "crime of violence" with reference to 18 U.S.C. § 924(c)(3), BOP officials claim they did not intend to adopt the body of case law which interprets that definition. (Resp.Mem.Dec. of Ms. Garrett at ¶ 9.) Section nine of Program Statement 5162.02 ("section nine"), to which petitioner objects, directs prison officials to consider the "Specific Offense Characteristics" contained in the presentence investigation report in determining whether a particular crime should be defined as a crime of violence.[1] In

---

**1.** Section 9 of the Program Statement states as follows:

> Convictions for an offense listed below, like those listed in Section 8 above, may or may not have involved the use, attempted use, or threat

applying this program statement to petitioner, the BOP defined her offense of conviction (conspiracy to distribute and possession with intent to distribute heroin) as a crime of violence since petitioner had received a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Petitioner challenges the validity of Program Statement 5162.02, contending that it was not promulgated correctly pursuant to the APA or alternatively is an *ultra vires* interpretation of section 3621(e)(2)(B). This opinion addresses only the applicable section of the Program Statement, section nine.

■ The first question this court must address is whether judicial review under the APA is precluded by 18 U.S.C. § 3625. There is a presumption favoring judicial review of administrative action, which applies absent "clear and convincing evidence" that Congress intended to foreclose judicial review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967). Such evidence can come in the form of "specific [statutory] language or specific legislative history that is a reliable indicator of congressional intent." *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984).

Congress clearly intended to preclude review of certain decisions made pursuant to 18 U.S.C. § 3621. 18 U.S.C. § 3625 provides

that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter [sections 3621–3626]."

■ Sections 554 and 555 of the APA apply only to "adjudications," that is determinations which apply rules to individual cases. 5 U.S.C. §§ 554, 555; *see, e.g., Hercules, Inc. v. Environmental Protection Agency*, 598 F.2d 91 (D.C.Cir.1978). Sections 701 through 706 deal generally with judicial review of agency action; however, 18 U.S.C. § 3625 states that it is only decisions, determinations and orders to which they do not apply.[2] This distinction between a "decision, determination [or] order" and a rule is reinforced by the conspicuous failure of 18 U.S.C. § 3625 to preclude review under 5 U.S.C. § 553, the section governing rulemaking under the APA. The only case, thus far, to address 18 U.S.C. § 3625 held that courts were precluded from reviewing adjudicative decisions of agencies but were not precluded from reviewing rulemaking decisions. *Lyle v. Sivley*, 805 F.Supp. 755 (D.Ariz.1992). Moreover the House Report on Section 3625 "provides that rule-making activities are to be reviewed under the APA, while 'adjudication[s] of specific cases' are not." *Id.* at 759. Accordingly, the court finds that 18 U.S.C.

of force, or presented the substantial risk that force might be used against the person or property of another. At the time of sentencing, the court makes a finding if the offense involved violence, and this finding is reflected in the Presentence Investigation Report section entitled "Offense Computation," subsection entitled "Specific Offense Characteristics." This subsection references a particular United States Sentencing Guideline that provides for an increase in the Total Offense Level if the criminal violation was committed with force. [Example omitted.] Some of the offenses listed below may correspond to more than one Sentencing Guideline, only one of which includes a Specific Offense Characteristic for violence. Alternatively, the Presentence Investigation Report may fail to adequately describe the Specific Offense Characteristic that underlies the increase in offense level. In either case, it is possible that an examination of the Offense Computation section of the Presentence Investigation Report reveals no mention of violence. If this occurs, case management staff must examine the particular Sentencing Guideline referenced to determine whether the court found that the use of force was implicated in the offense. [Example omitted.] Below is a list of offenses for which there could be a Specific Offense Characteristic enhancement for the use of violence [which includes 21 U.S.C. § 846 (attempt and conspiracy)].

2. Although the court does not wish to join the "battle of the dictionaries" waged by the parties in this case, the court notes with approval the Magistrate Judge's explanation that the words "decision, determination and order" relate to adjudications rather than rulemaking. In fact, the APA defines "adjudication" as the "agency process for the formulation of an order." 5 U.S.C. § 551(7) (1994). An "order" is defined as "the whole or a part of a final disposition ... of an agency in a matter other than rulemaking...." 5 U.S.C. § 551(6) (1994).

§ 3625 does not preclude judicial review of agency rulemaking.[3]

■ The APA defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. § 551(4). Rulemaking is defined as the "agency process for formulating, amending, or repealing a rule...." 5 U.S.C. § 551(5). Thus defined, section nine is a clear example of agency rulemaking. Its scope affects not just one prisoner, but all prisoners. It does not involve the application of a regulation to a particular set of facts, but, rather, seeks to establish guidelines applicable to a wide range of situations. Accordingly, the court finds judicial review is not precluded in this case.

■ The court must now determine whether section nine was promulgated correctly under the APA. Legislative rules must undergo notice and comment procedures; interpretive rules need not. 5 U.S.C. § 553(b)(3)(A) (1982); *Jerri's Ceramic Arts, Inc., v. Consumer Product Safety Comm'n,* 874 F.2d 205, 208 (4th Cir.1989). Legislative rules which do not comply with the notice and comment procedures must be set aside. *Id.* Interpretive rules "simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties." *Id.* at 207. "In contrast, a substantive or legislative rule, promulgated pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." *Id.* That the BOP considers section nine to be an interpretive rule is not dispositive. An agency's "characterization of its statement as an exposition of its policy or interpretation of the standard does not preclude a finding that it is something more." *Nat'l Knitwear Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,* 666 F.2d 81, 83 (4th Cir.1981).

In this case section nine did more than merely remind the parties of their duties. "Rather [it contained] self imposed controls over the manner and circumstances in which the agency ... exercise[d] its plenary power." *Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974); *see also National Family Planning v. Sullivan,* 979 F.2d 227, 231 (D.C.Cir.1992).

■ Moreover, section nine did not merely interpret 28 C.F.R. § 550.58; it contradicted it. 28 C.F.R. § 550.58 defines a "nonviolent offense" as one which is not a "crime of violence" as defined by 18 U.S.C. § 924. In borrowing the statutory definition of "crime of violence," section 550.58, by necessity, imported the case law which interprets that definition. *Lechmere, Inc. v. Nat'l Labor Relations Bd.,* 502 U.S. 527, 536–37, 112 S.Ct. 841, 847–48, 117 L.Ed.2d 79 (1992); *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 131, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.").

The Fourth Circuit has held that a particular crime may be defined as a "crime of violence" only by looking to the "intrinsic nature of the crime, not to the facts of each individual commission of the offense." *United States v. Aragon,* 983 F.2d 1306, 1312 (4th Cir.1993); *United States v. Thompson,* 891 F.2d 507 (4th Cir.1989), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). In defining certain crimes as "crimes of violence" depending upon whether enhancements were given for gun possession, section nine changed the definition of "crime of violence" as stated by 28 C.F.R. § 550.58 and defined by the courts. This change imposed new restrictions upon those applying for early release. In doing so, it became a legislative rule subject to the notice and comment

---

**3.** Respondents contend that such an interpretation would render 18 U.S.C. § 3625 meaningless. (Respondents' Objections at 4–5.) They claim that all possible decisions made under sections 3621–3626 would be rulemaking decisions. This cannot be the case, however. There are many individual, adjudicative decisions implicated by sections 3621–3626, including transfer of a prisoner from one correctional facility to another, *see* 18 U.S.C. § 3621(b), the temporary release of a prisoner to attend a funeral, *see* 18 U.S.C. § 3622, and the transfer of a prisoner to State authority. *See* 18 U.S.C. § 3623.

requirements of the APA.[4] *See Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, ——, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995) (dicta stating that APA rulemaking would be required if a policy statement "adopted a position inconsistent with any of the Secretary [of Health and Human Services'] existing regulations"); *Fairfax Nursing Ctr., Inc. v. Califano*, 590 F.2d 1297, 1301 (4th Cir.1979) ("The Secretary is not free to promulgate regulations and then change their meaning by 'clarifications' or 'interpretations' issued without formal notice and comment. To do so would frustrate the policies of fair notice and comment in the Administrative Procedure Act."). Accordingly, the court finds section nine to be a legislative rule subject to the notice and comment requirements of the APA. Since section nine failed to comply with these requirements, the court declares Bureau of Prisons Program Statement 5162.02 § 9 void. *See Jerri's Ceramic Arts, Inc.*, 874 F.2d at 208.

■ This holding rests upon a second reason. Even if the court were to find that

section nine need not undergo notice and comment, it would still be void as an *ultra vires* interpretation of 28 C.F.R. § 550.58. As discussed above, by changing the definition of "crime of violence" as defined in 18 U.S.C. § 924(c)(3) and interpreted by the courts, section nine conflicts with 28 C.F.R. § 550.58, the BOP's own properly promulgated regulation. An agency may not enforce rules which contradict its own regulations. *See United States v. Nixon*, 418 U.S. 683, 695, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *National Family Planning v. Sullivan*, 979 F.2d 227, 234 (D.C.Cir. 1992).

Respondents contend that supplementary information to 28 C.F.R. § 550.58 anticipated that factors other than the statutory definition found in 18 U.S.C. § 924(c)(3) would be taken into consideration "[i]n exercising the Bureau's discretion in reducing a sentence."[5]

---

4. A recent Supreme Court case seemed to suggest that program statements by their nature cannot be legislative rules. The Court referred to a "BOP[] internal agency guideline, which is akin to an 'interpretive rule' that 'do[es] not require notice-and-comment.'" *Reno v. Koray*, —— U.S. ——, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (quoting *Guernsey*, 514 U.S. at ——, 115 S.Ct. at 1239). The language borrowed from *Guernsey* described a certain Medicare reimbursement guideline as "a prototypical example of an interpretive rule … [which does] not require notice-and-comment, … [and does] not have the force and effect of law and [is] not accorded that weight in the adjudicatory process." *Guernsey*, —— U.S. ——, 115 S.Ct. at 1239. Although the language in *Reno v. Koray* may appear to hold that all program statements are interpretive rules, a better reading would limit the Court's explanation to the particular program statement under consideration, which happened to be an interpretive rule. In fact, the Court in *Guernsey* recognized that certain policy statements can be legislative rules, stating, "[w]e can agree that APA rulemaking would still be required if [the policy statement] adopted a new position inconsistent with any of the Secretary's existing regulations." *Id.; See also Pickus v. United States Bd. of Parole*, 507 F.2d 1107 (1974) (holding Parole Board guidelines to be legislative in nature and subject to the notice and comment provisions of the APA); *Prows v. United States Dep't of Justice*, 704 F.Supp. 272, 276–77 (D.D.C. 1988), *aff'd* 938 F.2d 274 (D.C.Cir.1991) (finding a BOP program statement to be legislative in

nature and thus subject to the notice and comment provisions of the APA).

5. The supplementary information published at the same time as C.F.R. § 550.58 states as follows:

New § 550.58 establishes procedures to be used by the Bureau in determining eligibility for early release and for determination of the length of the reduction in sentence. In keeping with the statutory provision that possible reduction in sentence is applicable to an inmate convicted of a nonviolent offense, an inmate whose current offense falls under the definition in 18 U.S.C. § 924(c)(3) of a crime of violence is excluded from consideration. Under this section, a crime of violence means an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. Information contained in the Presentence Investigation Report ordinarily is sufficient to allow staff to determine if the inmate's committed offense meets this definition of crime of violence. In exercising the Bureau's discretion in reducing a sentence, the Bureau shall also review the criminal history of the inmate contained in the Presentence Investigation Report, and any inmate with a federal and/or state conviction for homicide, forcible

Thus, they claim the fact that additional factors would be considered was already put out for notice and comment. Putting aside the question of whether a general statement in the supplement to a regulation meets the requirements of notice and comment,[6] the argument would have some merit if section nine had merely purported to enunciate additional factors that the BOP would consider. The fatal error for section nine, however, is its claim to be an interpretation of 18 U.S.C. § 924(c)(3). While the BOP is free to promulgate additional requirements for eligibility, these considerations cannot be used to define "crime of violence." "Crime of violence" has already been defined by the courts. The BOP was under no obligation to borrow this definition, but having borrowed it, they must accept the case law that interprets it.

■ Having found section nine void for failure to comply with the notice and comment procedures outlined in the APA,

the court must now determine the proper remedy available to the plaintiff.[7] Petitioner does not request the court to order that she be released,[8] but rather to declare her eligible for release subject to any further discretionary decisions the BOP may make. (Pet'r's Resp. to Resp'ts' Obj. at 2.) The Magistrate Judge recommended that the court so find.

■ The court declines to adopt the Magistrate Judge's recommendation that it declare petitioner eligible for release. To do so would impermissibly encroach upon an area Congress left to the discretion of the BOP. *See supra*, note 8. Rather, having held section nine void, the court leaves the determination of eligibility and release to the discretion of the BOP consistent with the reasoning in this opinion. Although the BOP may not use specific offense characteristics to determine eligibility, the court recognizes that the BOP may wish to employ other valid considerations in informing its discretion or pro-

rape, robbery, or aggravated assault shall also be excluded from consideration. Because state convictions may show a considerable range in the degree of violence used in the offense, the Bureau has chosen to use the above cited categories of crimes, which are reported under the FBI Violent Crime Index, as the sole determinant of violence in the criminal history.
Supplementary Information, 60 Fed.Reg. 27,692 (1995) (codified as 28 C.F.R. § 550).

6. In fact, the supplemental information says nothing about the use of criminal history categories to define the term "crime of violence." It merely explains what was already explicit in C.F.R. § 550.58, that the criminal history category in a prisoner's presentence investigation report would be reviewed to determine if a prisoner had been convicted of one of the four state crimes which would automatically render a prisoner ineligible for early release.

7. In the cases submitted to the court by the BOP pursuant to the court's Order entered on August 27, 1996, the court found three different approaches used by the courts in granting relief in similar cases. The first approach is to deny relief entirely, usually under a theory that the discretionary language in the statute grants petitioner no liberty interest in early release or that the BOP's Program Statement is entitled to deference. Courts in the Western District of Texas, the Western District of Pennsylvania and the Central District of Illinois have so held. The second approach is to find the petitioner eligible for release and order that his sentence be re-

duced by one year. Courts in the District of Oregon, the Central District of California, and the District of Arizona have so held. The third approach is to declare the petitioner eligible, but not order that he be released. Only the District of South Dakota has so held.

8. Petitioner is right not to request release, since "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). 18 U.S.C. § 3621 only allows that the BOP *may* shorten an inmate's sentence by up to a year. *See O'Bar v. Pinion*, 953 F.2d 74, 84 (4th Cir. 1991) (holding that a statute which "established a work-release plan under which an eligible prisoner may be released from actual custody" if certain requirements were met, created a "hope about a future discretionary decision by prison administrators [which was] too speculative to give an inmate a liberty interest"); *Cf. Board of Pardons v. Allen*, 482 U.S. 369, 377–78, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303 (1987) (finding that the word "shall" created " 'a presumption that parole release will be granted' when the designated findings are made") (quoting *Greenholtz*, 442 U.S. at 12, 99 S.Ct. at 2106). Such conditional language does not create a liberty interest. Nor does failure to comply with the notice and comment provisions of the APA necessarily cause plaintiff's custody to violate the Constitution or laws of the United States. *White v. Henman*, 977 F.2d 292, 295 (7th Cir.1992).

mulgate new regulations to address this situation.[9]

The court also declines to adopt the Magistrate Judge's recommendation that the court declare petitioner a "prisoner convicted of a nonviolent offense," within the meaning of 18 U.S.C. § 3621(e)(2)(B). The considerations outlined in section nine do not necessarily constitute an impermissible interpretation of 18 U.S.C. § 3621. The court merely holds that the BOP, having chosen a certain definition by promulgating 28 C.F.R. § 550.58, may not provide a contradictory definition in its Program Statements.

Accordingly, after a *de novo* review of the record, the court adopts the findings and recommendations of the Magistrate Judge insofar as they agree with the opinion of this court; DENIES respondents' motion to dismiss and alternative motion for summary judgment filed on March 4, 1996; GRANTS petitioner's petition insofar as it requests declaratory relief; DECLARES BOP Program Statement 5162.02 § 9 VOID; and REMANDS this case to the BOP for determination of petitioner's eligibility for early release consistent with the reasoning of this opinion.

The Clerk is directed to remove this action from the docket of the court and mail a certified copy of this order to counsel of record in this case.

---

9. Nothing in this opinion holds that the BOP may not use specific offense characteristics as additional considerations in exercising its discretion over whom to release, provided that such a rule is promulgated pursuant to the notice and comment procedures of the APA.