**Don MARTIN, Petitioner,**

**v.**

**Joseph CRABTREE, Warden, Federal Correctional Institution, Sheridan, Oregon, Respondent.**

**Civil No. CV 96–1213–HA.**

United States District Court, D. Oregon.

Oct. 24, 1996.

Stephen R. Sady, Chief Deputy Federal Public Defender, Wendy Rae Willis, Assistant Federal Public Defender, Portland, OR, for Petitioner.

Kristine Olson, United States Attorney, District of Oregon, Kenneth C. Bauman, Assistant United States Attorney, Portland, OR, for Respondent.

## OPINION

HAGGERTY, District Judge:

The petitioner, Don Martin, is an inmate at the Federal Correctional Facility at Sheridan, Oregon. The respondent, Joseph H. Crabtree, is the warden of the Federal Correctional Institute at Sheridan, Oregon and is inmate Martin's custodian and the proper respondent in this action. Fed.R.Civ.P. 81(a)(2); *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir.1992). Martin filed a habeas corpus petition alleging that his statutory and due process rights were violated by the decision of the Bureau of Prisons ("BOP") to exclude him from eligibility for a sentence reduction notwithstanding his successful completion of a residential substance abuse treatment program under 18 U.S.C. § 3621(e).

Martin filed his petition seeking relief on the merits. In addition, he filed a motion seeking immediate release because with the one-year reduction he would have been released to date. Alternatively, Martin sought conditional release pending final resolution on the merits, which the court granted. Oral argument was heard on this matter and, for the reasons that follow, Martin's petition for a Writ of Habeas Corpus is DENIED.

## BACKGROUND

Martin is serving a 57–month sentence at FCI Sheridan for unarmed bank robbery in violation of 18 U.S.C. § 2113(a). He entered the BOP's 500–hour treatment program on May 11, 1995; and he completed the treatment program on June 4, 1996. Martin entered the treatment program notwithstanding the BOP had made no determination concerning his eligibility for a sentence reduction. Mid-way through the program Martin was informed he was ineligible for the one-year sentence reduction because of a witness statement in his pre-sentence report suggesting the presence of a weapon. On January 9, 1996, however, the sentencing judge issued an order clarifying that Martin was convicted of unarmed bank robbery and there was no evidence to support a finding

that Martin threatened the use of a gun during any of the robberies.

Subsequently, on January 18, 1996, the BOP reconsidered Martin's request for the one-year reduction, and deemed him eligible pursuant to the BOP Policy Statement 5162.02 and 18 U.S.C. § 3621(e). On May 6, 1996, however, the BOP once again declared Martin ineligible for the one-year reduction pursuant to the BOP Change Notice CN–01, dated April 23, 1996, to Program Statement 5162.02 (July 24, 1995).

Section 3621(e)(2)(B) provides, in part, that: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons. . . ." 18 U.S.C. § 3621(e)(2)(B). Program Statement 5162.02 defines the term "crimes of violence" for the application of section 3621(e). It divides offenses into various categories: criminal offenses that are always crimes of violence; criminal offenses that may be crimes of violence, depending on the base offense assigned or specific offense characteristics; and criminal offenses that may be crimes of violence depending on a variety of factors.

With respect to 18 U.S.C. § 2113(a), bank robbery, only armed bank robbers were categorically excluded. Unarmed bank robbers were addressed in Section 9, entitled "Criminal Offenses That May Be Crimes Of Violence Depending On The Specific Offense Characteristics Assigned." Thus, unarmed bank robbers with no specific offense characteristics were categorically eligible for the one-year reduction.

The Change Notice issued by the BOP on April 23, 1996, provided:

> With regard to the specific crime of bank robbery, the offense should be considered a crime of violence pursuant to section 924(c)(3) since, due to the circumstances surrounding bank robberies, the offense involves an explicit or implicit threat of force and thus has as an element the "threatened use of physical force against the person or property of another."

Change Notice–01 (April 23, 1996). Thus, the Change Notice amended the BOP's prior policy of granting eligibility to persons convicted of unarmed bank robbery and declared that all program participants convicted under 18 U.S.C. § 2113(a) were categorically ineligible for the section 3621(e) incentive.

## DISCUSSION

Martin requests that he be granted a one-year sentence reduction based on the following grounds: 1) the parallel doctrines of promissory and equitable estoppel preclude the BOP from revoking eligibility because it represented to him that he was eligible for a sentence reduction, and he reasonably relied on those representations to his detriment; 2) he is statutorily eligible for a one year sentence reduction because he was convicted of a "nonviolent" offense; 3) the retroactive application of the Program Statement and Change Notice violates principles of *stare decisis*, and 18 U.S.C. § 3621(e) and the Administrative Procedures Act ("APA"); and 4) the BOP's Program Statement 5162.02 and Change Notice–01 are invalid because they are legislative rules promulgated without notice and comment as required by the APA.

### I.  *Promissory And Equitable Estoppel*

Martin asserts theories of promissory and equitable estoppel in an attempt to require the BOP to grant the sentence reductions. Martin distinguishes the doctrines: he asserts promissory estoppel as a basis to enforce future guarantees and equitable estoppel as a basis to remedy government misconduct. Apparently, Martin asserts promissory estoppel in an attempt to bind the BOP to its statement that he was eligible for the sentence reduction, and he asserts equitable estoppel in an attempt to prevent the BOP from applying Change Notice–01 to him. The government does not distinguish between promissory and equitable estoppel.

The Ninth Circuit characterizes the difference between the doctrines as follows: "promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute." *Jablon v. United States,* 657 F.2d 1064, 1068 (9th Cir.1981). Regardless, it ap-

pears the parties agree that to assert either promissory or equitable estoppel against the government the moving party must prove, *inter alia,* that there was reasonable reliance on the promise to the promisee's detriment and that a failure to apply estoppel would result in a serious injustice. With respect to equitable estoppel, the parties agree that to estop the government, there first must be proof that the government's conduct was more culpable than mere negligence, i.e., a showing of affirmative misconduct.

The government argues that there was no reasonable reliance or detrimental reliance by Martin. The government asserts that to be eligible for a sentence reduction, the prisoner must first complete the program and, even then, discretion is vested in the BOP to grant or deny a reduction. *See* 18 U.S.C. § 3621(e)(2)(B). Moreover, the prisoner is informed only that he is eligible for release, not that he is granted a one-year sentence reduction.

It is undisputed that at the time Martin entered the treatment program the BOP had not determined whether he would be eligible for the one-year sentence reduction. After a few months in the program, Martin was informed that he would not be eligible. Nevertheless, he continued with the program. Neither did Martin leave the program even after he was informed a second time that he was ineligible for a sentence reduction. Accordingly, the facts do not support Martin's assertion that he relied on the BOP's statement of eligibility as incentive for his participation in the program.

Martin failed to provide any documentary evidence to support his assertions regarding detrimental reliance. Rather, Martin merely asserted that the program was demanding and he had expectations of returning home to family and a job. The BOP's refusal to grant a sentence reduction does not prevent Martin from returning to family and a job at the time of his scheduled release. Further, by completing the program Martin arguably enhanced his future opportunities. Neither the rigors of the program nor Martin's anticipated opportunities following release constitute detrimental reliance sufficient to apply estoppel against the government.

▮ Although a finding of affirmative misconduct does not depend on a showing that the government intended to mislead, it does require an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Watkins v. U.S. Army,* 875 F.2d 699, 707 (9th Cir.1989), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990). It requires some action by the government that rises above mere negligence. *Green v. Christiansen,* 732 F.2d 1397, 1399 (9th Cir.1984). Such conduct was not present in this case.

The BOP amended its policy with respect to unarmed bank robbery as it applies to a prisoner's threshold eligibility for a reduction in sentence. The change in policy was founded in existing Ninth Circuit law regarding unarmed bank robbery as a crime of violence. Further, any sentence reduction is in the first instance solely within the BOP's discretion. As such, the BOP's actions do not constitute affirmative misconduct.

## II. *Crimes Of Violence*

▮ Alternatively, Martin argues he is entitled to a sentence reduction under section 3621(e) because he was convicted of a nonviolent offense, namely, unarmed bank robbery. The issue for the court, once again, is the meaning of the phrase in section 3621(e)(2)(B) "a prisoner convicted of a nonviolent offense." The BOP adopted 28 C.F.R. § 550.58 to aid in its determination of whether a particular offense was "nonviolent."

Section 550.58 states, in pertinent part, that:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section, ... unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

28 C.F.R. § 550.58.

In turn, section 924(c)(3) provides:

The term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The BOP also promulgated Program Statement 5162.02, entitled "Definition of Term, 'Crime of Violence' " in order to implement the provisions of section 550.58 and it was intended to comply with the definition of "crime of violence" in section 924(c)(3).

Section 9 of Program Statement 5162.02 enumerated offenses that might be crimes of violence depending on particular facts of the offense. Section 9 requires prison officials to consider whether, at the time of sentencing, the court made a determination that the offense involved violence and whether that determination was based upon a specific offense characteristic in the pre-sentence report. Program Statement 5162.02 initially listed 18 U.S.C. § 2113(a), Martin's crime of conviction, as one of the offenses for which there could be a Specific Offense Characteristic enhancement for the use of violence. The Change Notice–01 issued on April 23, 1996, reclassified section 2113(a) as a per se crime of violence and, therefore, categorically excluded all persons convicted under that statute from eligibility for a one-year sentence reduction.

The reclassification of section 2113(a) by the BOP as a crime of violence comports with the plain language of that statute, and Ninth Circuit law. *See* 18 U.S.C. § 2113(a); *see also United States v. Selfa,* 918 F.2d 749 (9th Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990). Section 2113(a) provides, in part, that:

Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of,

any bank, credit union, or any savings and loan association....

18 U.S.C. § 2113(a). In order to be convicted under section 2113(a), Martin must have committed each element of the offense, including the element of "by force and violence, or by intimidation." Indeed, if the offense characteristics did not include the element of "force and violence" or "intimidation," the offense would be a bank larceny under section 2113(c). *Compare* 18 U.S.C. § 2113(a) *with* 18 U.S.C. § 2113(c).

Moreover, this court has held that the BOP is not vested with the authority to define "crime of violence" in a manner inconsistent with governing case law. Rather, the BOP is required to follow Ninth Circuit precedent when determining whether a particular offense is a crime of violence. The BOP was authorized to categorically exclude persons convicted of unarmed bank robbery from the sentence reduction incentive.

### III. *Retroactivity Of Change Notice–01/Violation Of The APA*

Finally, Martin argues that Change Notice–01 may not be applied to him retroactively and, alternatively, that Program Statement 5162.02 and Change Notice–01 are void because the BOP failed to comply with the notice and comment requirements of the APA when it promulgated those provisions.

The issue of the retroactive application of Change Notice–01 is irrelevant in this case. The determination regarding a prisoner's eligibility for the sentence reduction is made at the time the prisoner completes the program. Indeed, successful completion of the treatment program is a prerequisite to eligibility for a reduction of the prisoner's sentence. Even then the BOP is not compelled to reduce the prisoner's sentence. In this case, Change Notice–01 was promulgated, and Martin was notified, prior to completing the 500–hour program.

With respect to Martin's contention that Program Statement 5162.02 and Change Notice–01 are void under the APA, at least one federal district court has already determined that Section 9 of Program Statement 5162.02 is void under the requirements of the APA.

*See Wiggins v. Wise,* CV No. 1:96–0113, —— F.Supp. —— [1996 WL 728190] (S.D.W.Va. 1996). Regardless, such a determination does not aid Martin in this case. In striking Section 9, the court in *Wiggins* determined that Section 9 did not merely interpret 28 C.F.R. § 550.58, but contradicted it by defining certain crimes as "crimes of violence" depending on the facts of each individual commission of the offense.

In accordance with earlier decisions of this court, the court in *Wiggins* reasoned that because section 550.58 defined a "non-violent offense" as one that is not a "crime of violence" as defined by 18 U.S.C. § 924, it necessarily adopted the case law that interprets that definition. Thus, a particular crime may be defined as a "crime of violence" only by looking to the "intrinsic nature of the crime, not to the facts of each individual commission of the offense." *See United States v. Aragon,* 983 F.2d 1306, 1312 (4th Cir.1993).

As discussed above, the Ninth Circuit determined that a section 2113(a) violation is inherently a crime of violence. The BOP is not permitted to disregard the body of case law construing section 924(c)(3) when it promulgates its Program Statements. Accordingly, Martin would not be entitled to a sentence reduction on the ground that Program Statement 5162.02 is void. In addition, the court in *Wiggins* declined to declare the petitioner eligible for release as a remedy to the BOP's violations of the APA. Rather, the court left the determination of eligibility and release to the discretion of the BOP consistent with the reasoning of its opinion.

## CONCLUSION

Based on the foregoing, Martin's petition for a Writ of Habeas Corpus is DENIED.